UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 14-153 |
| AKARI WILLIAMS, ET AL. | SECTION: "E" (4) |

### ORDER AND REASONS

Before the Court is Defendant Phillips Thompson's motion *in limine* to exclude physical evidence and alleged coconspirator hearsay statements.[1] Specifically, Defendant Thompson seeks to exclude evidence of firearms and ammunition allegedly found in Defendant Williams's home and car and in Defendant Lirette's home, and uncharged narcotics allegedly found at Defendant Williams's home. In addition, Defendant Thompson seeks to exclude post-arrest statements made by Defendants Williams and Lirette to law enforcement and post-arrest statements made by Defendants Williams and Lirette during jail calls.[2] The Government opposes this motion.[3] For the reasons that follow, the motion *in limine* is **GRANTED IN PART** and **DENIED IN PART**.

### LAW AND ANALYSIS

**A. Firearms and Ammunition Found in Defendant Wliams' Home**

Defendant Phillips Thompson seeks to exclude evidence of an AK-47 and a bag of ammunition allegedly found in co-Defendant Williams's home.[4] Defendant Thompson

---

[1] R. Doc. 168.
[2] In addition, the Government and the Defendants filed trial memoranda relating in part to the introduction of jail calls. *See* R. Docs. 172; 189. As these trial memoranda discussed evidentiary issues, the Court treated them as motions *in limine*. To the extent these memoranda addressed the admissibility of a jail call made by Akari Williams, the motions are moot as the Court rules herein that the jail calls are not admissible.
[3] R. Doc. 171.
[4] R. Doc. 168-1, at 1.

1

argues the firearms in question were legally purchased by Defendant Williams and that neither the AK-47 nor the ammunition is relevant to the Government's charges against him.[5] In addition, even assuming a slight probative value, Defendant Thompson argues any such probative value is vastly outweighed by the prejudice to his defense.[6]

Federal Rule of Evidence 401 establishes the test for determining whether or not evidence is relevant.[7] Under Rule 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[8] Under Rule 402, "Irrelevant evidence is not admissible."[9] Additionally, Rule 403 grants the Court the ability to exclude evidence that is otherwise relevant "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[10] "Unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[11]

Defendant Thompson argues the weapons found at his co-Defendants' homes are not relevant to the charges in the indictment as "[t]here is no mention of firearms or violence in the indictment, no violent acts or gun use are alleged as overt acts undertaken by the alleged conspiracy, and the guns were lawfully purchased."[12] The Government counters that the firearms and ammunition found in Defendant Williams' bedroom

---

[5] *Id.*
[6] *Id.* at 2.
[7] FED. R. EVID. 401.
[8] *Id.*
[9] *Id.* at 402.
[10] *Id.* at 403.
[11] *Id.* at advisory committee's notes.
[12] R. Doc. 168-1, at 2.

2

should be admitted because they are relevant evidence of his intent to distribute drugs and that this evidence should be admitted against all Defendants because it establishes the existence of the conspiracy and how the Defendants distributed drugs.[13]

The Government alleges that on the day of the controlled delivery, Defendants Williams and Lirette opened a package containing three pounds of methamphetamine inside Defendant Williams' master bathroom. The Government further alleges that during the ensuing search of Defendant Williams' home, the officers recovered from the master bedroom a digital scale and an AK-style rifle steps away from a closet containing over $4,000 in cash and prescription pills. The Government argues the close proximity of the AK-style gun to Defendant Williams' cache of drugs and money further demonstrates the firearm should be admitted as intrinsic evidence relevant to the charged conspiracy.[14]

The Fifth Circuit has explained, "It is well established that where a conspiracy is charged, acts that are not alleged in the indictment may be admissible as part of the Government's proof."[15] In addition, The Fifth Circuit "has recognized that firearms are 'tools of the trade' of those engaged in illegal drug activities and are highly probative of proving criminal intent."[16] In *United States v. Baker*, a case involving two defendants charged with conspiracy to distribute cocaine, the Fifth Circuit explained, "Otherwise lawful acts may become unlawful when they as a whole constitute a criminal conspiracy. The law allows these inferences when dealing with conspiracies."[17] The *Baker* court upheld the introduction of the contents of the both defendants' homes which included cocaine, guns and a scale after finding "the direct evidence and the accumulation of

---

[13] R. Doc. 171, at 2.
[14] The AK-style gun found in Defendant Williams' home was legally purchased and owned.
[15] *United States v. Watkins*, 591 F.3d 780, 785 (5th Cir. 2009).
[16] *United States v. Martinez*, 808 F.2d 1050, 1057 (5th Cir. 1987).
[17] *United States v. Baker*, 78 F. App'x 318, 321 (5th Cir. 2003).

3

circumstantial evidence could lead a rational jury to convict."[18] Similarly, the Fifth Circuit, in *United States v. Nguyen*, reiterated, "Firearms are considered 'tools of the trade' in drug trafficking offenses and are relevant intrinsic proof of an ongoing conspiracy."[19]

The Court finds that the AK-style rifle found in Defendant Williams' bedroom is relevant to the charged conspiracy. In *United States v. Hall*, the Fifth Circuit affirmed the defendant's conviction for possession of firearms in furtherance of drug trafficking crimes where the facts demonstrated that the firearms and drugs in question were found in the same room and in close proximity to one another.[20] The government represents that the evidence will show that the three pounds of methamphetamine was opened in Williams' master bathroom. The rifle found in Defendant Williams home was in the adjacent master bedroom and in close proximity to other evidence of the alleged conspiracy, such as the digital scale. The ammunition found in Defendant Williams home is also intrinsic evidence to the charged conspiracy as the Fifth Circuit has held that other components of firearms, such as silencers, are "deemed to be parts of the tools-of-the-trade of drug trafficking and are relevant intrinsic proof of an ongoing conspiracy."[21]

The Court also finds the probative value of the AK-style rifle and ammunition is not substantially outweighed by its potential prejudicial effect, therefore satisfying Rule 403 of the Federal Rules of Evidence. The Fifth Circuit has cautioned, "because it permits a trial court to exclude concededly probative evidence, Rule 403 is an extraordinary remedy which should be used sparingly."[22] As the Fifth Circuit explained in *United States v. McRae*:

---

[18] *Id.*
[19] *United States v. Nguyen*, 317 F. App'x 424, 428 (5th Cir. 2009).
[20] 240 F. App'x 655, 656 (5th Cir. 2007).
[21] *United States v. Garza*, 118 F.3d 278, 285 (5th Cir. 1997).
[22] *United States v. Thevis*, 665 F.2d 616, 633 (5th Cir. 1982).

4

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 is meant to relax the iron rule of relevance, to permit the trial judge to preserve the fairness of the proceedings by exclusion despite its relevance.[23]

In *Nguyen*, the defendant, arguing the district court abused its discretion in allowing the Government to introduce evidence of flight itineraries, maintained "the district court erred under [Rule] 403 because it allowed 'concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'"[24] The Fifth Circuit concluded:

> Proof of travel to Canada, however, is not prejudicial on its own. Evidence of this trip would not lure the jury into finding Nguyen guilty out of a prejudice against those who travel to Canada. If the evidence is prejudicial, it is prejudicial – as in most damaging – because of its relevance to this case.[25]

In the case before this Court, proof of Defendant Williams' gun possession is not prejudicial on its own. Possession of the gun is prejudicial because of its relevant to this case. The defense will have an opportunity to explain the facts and circumstances relating to Defendant Williams' legal gun possession.

### B. Handgun Found in Defendant Williams' Car

With respect to the firearm found in Defendant Williams' car,[26] the Government argues that, although Defendant Williams primarily sold drugs from his home, the

---

[23] *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).
[24] *Nguyen*, 317 F. App'x 424 at 428 (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997).
[25] *Id.*
[26] There appears to be some confusion as to where the handgun in question was found. In his motion, Defendant Thompson states Defendant Williams' handgun was found in home. *See* R. Doc. 168-1, at 1. The Government, on the other hand, states that the handgun was found in Defendant Williams' car. *See* R. Doc. 171, at 3. For the purposes of this order, the Court finds that the handgun would be admissible whether it was found in Defendant Williams' home or car.

5

Government will introduce testimony establishing Defendant Williams sometimes drove to meet his customers to sell them drugs.[27] For the same reasons as stated above, the handgun found in Defendant Williams' car is relevant evidence of the charged conspiracy and its probative value is not substantially outweighed by unfair prejudice.

### C. AK-style Clip Found in Defendant Lirette's Home

The Government argues the AK-style clip recovered from Defendant Lirette's[28] home is also intrinsic evidence of the charged conspiracy as this clip is the same type that is used for the gun seized from Williams' home. Unlike Defendant Williams' AK-style rifle and handgun, the Court finds this evidence is not intrinsic to the charged conspiracy. Although the Government has indicated it intends to introduce evidence to connect Defendant Williams' car to the charged conspiracy, the Government has not demonstrated a connection between the conspiracy and Defendant Lirette's home. As a result, the clip found in Defendant Lirette's home is extrinsic to the charged conspiracy.

Federal Rule of Evidence 404(b) governs the introduction of extrinsic evidence. Under Federal Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[29]

For 404(b) evidence to be admissible, the two-step test articulated in *United States v. Beechum* must be applied.[30] "First, it must be determined that the extrinsic offense

---

[27] R. Doc. 171, at 3.
[28] Defendant Lirette is severed from this case. R. Doc. 119.
[29] FED. R. EVID. 404(b).
[30] *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).

evidence is relevant to an issue other than the defendant's character."[31] As a threshold matter, the relevancy of extrinsic act evidence is conditioned on whether the defendant, in fact, committed the extrinsic act.[32] Rule 104(b) of the Federal Rules of Evidence states: "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later."[33] "Therefore, as a predicate to a determination that the extrinsic offense is relevant, the Government must offer proof demonstrating that the defendant committed the offense. If the proof is insufficient, the judge must exclude the evidence because it is irrelevant" under Rule 104(b).[34]

When "determin[ing] whether there is sufficient evidence for the jury to find the defendant in fact committed the extrinsic offense[,] . . . [t]he judge need not be convinced beyond a reasonable doubt that the defendant committed the extrinsic offense," and the Government need not "come forward with clear and convincing proof."[35] Rather, the standard for the admissibility of extrinsic offense evidence is whether there is evidence sufficient to permit a reasonable jury to find the preliminary facts by a preponderance of the evidence.[36]

Once this threshold is met, the Court must look at other indicia of relevance. When determining whether extrinsic act evidence is relevant to an issue other than the

---

[31] *Id.*
[32] *Id.* at 912. *See also U.S. v. Gutierrez-Mendez*, 752 F.3d 418, 423 (5th Cir.) *cert. denied*, 135 S. Ct. 298 (2014).
[33] FED. R. EVID. 104(b).
[34] *Beechum*, 582 F.2d at 912–13; *Gutierrez-Mendez*, 752 F.3d at 423.
[35] 582 F.2d at 913.
[36] *Id*; *U.S. v. Anderson*, 933 F.2d 1261, 1269 (5th Cir. 1991) (citing *Huddleston v. U.S.*, 485 U.S. 681, 688–90 (1988)).

defendant's character, as required to be admissible under 404(b), "relevance is a function of [the extrinsic offense's] similarity to the offense charged."[37] "[S]imilarity means more than that the extrinsic and charged offense have a common characteristic"—the common characteristic must be "the significant one for the purpose of the inquiry at hand."[38]

The second step of the *Beechum* test is that "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403."[39] "The task for the court in its ascertainment of probative value and unfair prejudice under rule 403 calls for a commonsense assessment of all the circumstances surrounding the extrinsic offense."[40] "Some of the factors [a court] must consider include: (1) the extent to which the defendant's unlawful intent is established by other evidence; (2) the overall similarity of the extrinsic and charged offenses; and (3) how much time separates the extrinsic and charged offenses because temporal remoteness depreciates the probity of the extrinsic offense."[41]

The Court finds that the evidence of the AK-style clip found at Defendant Lirette's home fails both prongs of the *Beechum* test. First, the Government has not clearly articulated how this extrinsic evidence is relevant to an issue other than the defendant's character. In its opposition, the Government makes only one reference to the clip found in Defendant Lirette's home: "The AK-style clip that was recovered from Lirette's home is also probative evidence of conspiracy, as this clip is the same type that is used for the gun

---

[37] *Id.*
[38] *Id.* (internal quotation marks and citation omitted).
[39] 582 F.2d at 911.
[40] *Id.* at 914.
[41] *United States v. Adair*, 436 F.3d 520, 525 (5th Cir. 2006) (quoting *Beechum*, 582 F.2d at 915) (internal quotations omitted).

seized from Williams' home." R. Doc. 171, at 3. Second, the Court finds that any probative value of this evidence is greatly outweighed by the danger of unfair prejudice.

### D. Narcotics Found in Defendant Williams' Home

Defendant Thompson seeks to exclude narcotics[42] found in Defendant Williams' bedroom closet because the pills are not relevant to the charged conspiracy.[43] Defendant Thompson argues the Government has not charged anyone with possession of these pills nor has it made any connection between the pills and the present case.[44] The Government maintains the various pills were seized next to the cash in Defendant Williams' bedroom closet and should be admitted as intrinsic evidence.[45] The Government argues, "The context in which these pills were recovered suggests intent to distribute," and "because intent to distribute is an element of the crimes charged here, and because this evidence is intrinsic evidence found at Williams' home, where he received three pounds of methamphetamine, the prescription pills that were seized should be admitted."[46]

The Government cites *Maceo* for the proposition that "Evidence of an uncharged offense arising out of the same transaction as the offenses charged in the indictment is not extrinsic evidence within the meaning of Rule 404(b), and is therefore not barred by the rule."[47] The Government, however, has not demonstrated the uncharged narcotics found in Williams' closet arise out of the same transaction as the charged conspiracy. In *Maceo*, the Fifth Circuit found the defendant's personal use of cocaine and his receipt of

---

[42] The Government states the narcotics were found in one unmarked orange pill container found in Defendant Williams' bedroom closet. R. Doc. 171, at 4. The Government states the pills include suspect alprazolam (Xanax), hydrocodone with acetaminophen (a pain reliever), clonazepam (a sedative), and Carisprodol (a muscle relaxant). *Id.* The Government states these are all scheduled drugs.
[43] R. Doc. 168-1, at 4.
[44] *Id.*
[45] R. Doc. 171, at 4.
[46] *Id.*
[47] *Id.* (quoting *Maceo*, 947 F.2d at 1199).

cocaine as legal fees demonstrated his knowledge that others were dealing cocaine.[48] The court held this evidence was intrinsic to the charged conduct because "evidence that [the defendant] personally used cocaine with others involved in this drug trafficking ring and that he received cocaine as legal fees is *clearly intertwined* with the evidence necessary to prove that he knew about the drug trafficking conspiracy and knowingly participated in it."[49] In the case before this Court, it is not clear there is any connection between the narcotics found in Defendant Williams' closet with the methamphetamine conspiracy charged in the superseding indictment. There mere fact that the pain pills were found in the Defendant Williams' home cannot satisfy the showing that the pills are clearly intertwined with Defendants' alleged possession, and possession with the intent to distribute, of methamphetamine.[50] As a result, the narcotics found in Defendant Williams' home may not be introduced as intrinsic evidence.

The Court finds the narcotics found in Defendant Williams' home are extrinsic to the charged conspiracy and therefore subject to Rule 404(b) and the two-prong test first articulated in *Beechum*.[51] The Court agrees with Defendant Thompson that the narcotics in question fail to satisfy either of the two requirements.[52] First, the Government has failed to identify how the pills found in Defendant Williams' home are relevant to an issue other than his character. The Government has not put forth any evidence demonstrating drug transactions related to the pills found in Defendant Williams' home and therefore this evidence does not show intent to distribute methamphetamine. Instead, the pills may

---

[48] *Maceo*, 947 F.2d at 1198.
[49] *Id.* at 1199 (emphasis added).
[50] Unlike firearms, which the Fifth Circuit has explained are "tools of the trade," the Fifth Circuit has not identified that painkillers are commonly possessed by traffickers of methamphetamine as a "tool of the trade."
[51] The Government has not briefed on whether the narcotics may be introduced as extrinsic evidence.
[52] R. Doc. 168-1, at 5.

10

only demonstrate that Defendant Williams is the kind of person who possess narcotics and that Defendant Thompson is the type of person who associates with someone who possesses narcotics. This is exactly the sort of "propensity" reasoning that Rule 404(b) forbids.[53]

The Court also finds that the narcotics found in Defendant Williams' home fail to satisfy the second prong of the *Beechum* analysis which requires the Court to determine whether probative the probative value of the extrinsic evidence is substantially outweighed by its prejudicial effect.[54] The Court finds the risk that the jury may find the Defendants guilty for this uncharged possession too great when compared to the limited probative value of the evidence. As a result, the Defendant's motion *in limine* is granted with respect to his request that the Government may not introduce evidence of narcotics found in Defendant Williams' home.

### E. Co-Conspirator Hearsay

Defendant Thompson seeks to exclude two categories of statements he believes the Government may attempt to introduce in its case-in-chief under Federal Rule of Evidence 801(d)(2)(E): (1) post–arrest statements made by Defendants Williams and Lirette to law enforcement; and (2) post-arrest statements made in jail calls by Defendants Williams and Lirette.[55]

First, with respect to statements made to law enforcement, the Government has explained it "does not intend to present [Defendant Williams and Lirette's] post-arrest

---

[53] *See United States v. Gomez*, 763 F.3d 845, 854 (7th Cir. 2014) (holding that the fact that a user quantity of cocaine was found in defendant's bedroom after the alleged drug conspiracy ended should not have been admitted under Rule 404(b) because its relevance was based solely on propensity reasoning).
[54] 582 F.2d at 911.
[55] R. Doc. 168-1, at 6. The Government has only briefed on the issues of Defendant Williams' jail calls.

11

statements to police in its case-in-chief."[56] The Government, however, "reserves the right to use these statements should Williams or Lirette take the stand."[57] As a result, Defendant Thompson's motion to exclude alleged coconspirator hearsay statements is denied as moot with respect to his request that the Court exclude post-arrest statements made to law enforcement by his co-Defendants during its case-in-chief.

Second, with respect to post-arrest statements made in jail calls by Defendants Williams and Lirette, the issue before the Court is whether these statements fall under Federal Rule of Evidence 801(d)(2)(E), often referred to as the "co-conspirator exception" to the hearsay rule. "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the court and in furtherance of a conspiracy."[58] The Fifth Circuit considers Rule 801(d)(2)(E) "[a] very narrow exception to the hearsay rule."[59] "Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule."[60] The Fifth Circuit has explained:

> Under our precedent, [t]he proponent of admittance under Rule 801(d)(2)(E) must prove by a preponderance of the evidence (1) the existence of a conspiracy, (2) the statement was made by a co-conspirator of the party, (3) the statement was made during the course of the conspiracy, and (4) the statement was made in furtherance of the conspiracy."[61] The content of the statement may be considered as part of the analysis, but there must also be independent evidence establishing the factual predicates for Rule 801(d)(2)(E).[62]

---

[56] R. Doc. 171, at 5 n.1.
[57] *Id.*
[58] *United States v. El-Mezain*, 664 F.3d 467, 502 (5th Cir. 2011) (quoting FED. R. EVID. 801(D)(2)(E)).
[59] *United States v. Pineda-Ortuno*, 952 F.2d 98, 105–06 (5th Cir. 1992); *see also Krulewitch v. United States*, 336 U.S. 440, 444 (1949) (referring to the co-conspirator exception as a "narrow exception to the hearsay rule").
[60] *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).
[61] *El-Mezain*, 664 F.3d at 502 (quoting *United States v. Solis,* 229 F.3d 420, 443 (5th Cir. 2002)).
[62] *Id.* (citing *United States v. Sudeen*, 434 F.3d 384, 390 (5th Cir. 2005)). *See also United States v. Ammar*, 714 F.2d 238, 246 n.3 (3d. Cir. 1983) (collecting cases and explaining that most circuits,

Demonstrating there was a conspiracy and that the statement was made during the course and in furtherance of the conspiracy are preliminary questions of fact that must be determined by the Court.[63] In *Bourjaily*, The Supreme Court further explained, "We have traditionally required that [preliminary questions of fact] be established by a preponderance of proof . . . [t]herefore, we hold that when the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence."[64]

The evidence at issue is a jail call made by Defendant Williams to his wife on May 31, 2014, less than 24 hours after his arrest.[65] According to the Government, "During the call, Williams tells his wife that 'my old boy' may be concerned, and asks his wife to '[c]all him he about to spook out.'"[66] Williams then provides a phone number for his wife to call, which was the same number as the number on the package of methamphetamine and Defendant Thompson's phone.[67] The Government argues "because of all this happens within a day of Williams' arrest in possession of the package that Thompson mailed, this call will establish that Williams was still part of the conspiracy and sought to preserve it by warning Thompson what happened."[68]

It is the Government's burden to demonstrate by a preponderance of the evidence that Defendant Williams' post-arrest statements were made in furtherance of the conspiracy.[69] "Post-arrest confessions or statements incriminating others by one

---

including the Fifth Circuit, take the position that the preliminary determinations as to admissibility must be made on the basis of independent evidence).
[63] *Bourjaily*, 483 U.S. at 175-76.
[64] *Id.*
[65] R. Doc. 171, at 6.
[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] *El-Mezain*, 664 F.3d at 502.

13

coconspirator are generally not made in furtherance of a conspiracy."[70] The Fifth Circuit has explained, however, "[i]f co-conspirators still at large are fully capable of perpetuating an on-going conspiracy, it is entirely possible that they or their arrested brethren may make statements intended to further effectuate the conspiracy."[71] The Government argues the call made by Defendant Williams to his wife was "made in furtherance of the conspiracy because he sought to warn Thompson so that police would not learn about other members of the conspiracy."[72]

The Government cites three cases in support of its position that courts have found statements made in post-arrest jail calls admissible under the co-conspirator hearsay exception.[73] These cases cited by the Government are distinguishable from the case currently before this Court. In comparison to the case before this Court, the cases cited by the Government all found that, despite the arrest of some co-conspirators, the conspiracy was still ongoing. For example, in *Brown*, the Seventh Circuit found the arrested co-conspirators "plotted to cover up and maintain the conspiracy after their arrest," through jail calls.[74] Likewise, in *Paredes*, the court allowed the introduction of a co-conspirator's post-arrest phone call commanding his wife to call the defendant in order to help him be released on bail as admissible non-hearsay under Rule 801. The *Paredes* court explained, "[w]ithout this directive from [the co-conspirator], his wife arguably would not have called [the defendant] for his help, and a drug courier would remain in jail, thus hindering

---

[70] *United States v. Weir*, 2001 WL 1465219, at *6 (5th Cir. Oct. 23, 2001) (quoting *United States v. Williams*, 87 F.3d 249, 254 (8th Cir. 1996)).
[71] *United States v. Register*, 496 F.2d 1072, 1078 (5th Cir. 1974).
[72] R. Doc. 171, at 7.
[73] *See* R. Doc. 171, at 8-9 (citing *United States v. Ortiz*, 590 F.App'x 708, 709 (9th Cir. 2015); *United States v. Paredes*, 176 F. Supp. 2d 183 (S.D.N.Y. 2001); *United States v. Brown*, 822 F.3d 966, 973 (7th Cir. 2016)).
[74] *Brown*, 822 F.3d at 973.

14

the objectives of the drug conspiracy."[75] Implicit is the notion that the conspiracy was ongoing and the released defendant could return to participate. In *United States v. Persico*, another case allowing post-arrest jail calls in as evidence under the co-conspirator hearsay exception, the Second Circuit found the arrest of some co-conspirators did not end the conspiracy in question after explaining:

> That some of the conspirators had been indicted and were under arrest is unimportant; as some of the charges in this case indicate, the Colombo Family was quite capable of continuing operations despite the fact that some of its members were incarcerated. Moreover, some members of the conspiracy found prison no obstacle to continuing their association with the enterprise.[76]

The Court finds that the Government has not satisfied its burden to demonstrate Defendant Williams' call to his wife was in furtherance of an ongoing conspiracy. In this case, the Government has not provided evidence the conspiracy was ongoing after Williams' arrest. To be in furtherance of a conspiracy, there must be a conspiracy. In addition, the Government has not shown Thompson was, at that time, fully capable of perpetuating an on-going conspiracy. Williams' statement that Thompson may "spook out" does not prove by a preponderance of the evidence that the statement was made during the course of a conspiracy in furtherance of that conspiracy. While the Government argues the call demonstrates Williams wanted to warn Thompson about his arrest, in the phone call in question, Defendant Williams' wife explains Thompson already knows about the arrest.[77] As a result, it appears Defendant Thompson knew about the arrest. The Government's argument that the call was made to warn Thompson is not sufficient to

---

[75] *Paredes*, 176 F. Supp. 2d at 190.
[76] *Perisco*, 822 F.3d 705, 715–16 (2d Cir. 1992).
[77] In the transcript of the call provided by the Government, Williams' wife states, "He been calling too he knows." Williams' wife then explains Thompson previously called and spoke to "Tootie."

15

show that the call was made in furtherance of an ongoing conspiracy. The statement therefore does not fall under the exception to the hearsay rule in Rule 801(d)(2)(E).[78]

## CONCLUSION

**IT IS ORDERED** that Defendant Thompson's motion *in limine*[79] is **DENIED** to the extent he seeks to exclude evidence of weapons and ammunition found in co-Defendant Williams' home and car. Defendant Thompson's motion is **GRANTED** to the extent he seeks to exclude evidence of the AK-style clip found in co-Defendant Lirette's home and narcotics found in Defendant Williams' home.

**IT IS ORDERED** that Defendant Thompson's motion is **DENIED** as moot to the extent he seeks to exclude post-arrest statements made to law enforcement by co-Defendants Thompson and Lirette during the Government's case-in-chief. Defendant Thompson's motion is **GRANTED** to the extent he seeks to exclude post-arrest jail calls made by co-Defendants Williams and Lirette. The Government may not attempt to introduce evidence of post-arrest calls as exceptions to the hearsay rule under Federal Rule of Evidence 801(d)(2)(E).

**New Orleans, Louisiana, this 8th day of November, 2016.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[78] As the jail call in question will not be admitted into evidence, the issues regarding the jail call discussed in both the Government and Defendant Phillip's trial memoranda are therefore dismissed as moot.
[79] R. Doc. 168.